UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| AMANDA HOSMER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 6:24-cv-1687-GMB |
| FRANK BISIGNANO, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

On September 21, 2021, Plaintiff Amanda Hosmer filed an application for a period of disability and disability insurance benefits ("DIB") with an alleged disability onset date of July 1, 2020. Hosmer's application was denied at the initial administrative level and upon reconsideration. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on April 18, 2024, and denied Hosmer's claims on May 8, 2024. Hosmer requested a review of the ALJ's decision by the Appeals Council, which declined review on October 3, 2024. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of October 3, 2024.

Hosmer's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge.

Doc. 10. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the [Commissioner's] factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or supplemental security income ("SSI"). However, separate parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

2

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 374–75 (11th Cir. 2007) (citing *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Hosmer bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform her former occupation?
> (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm., Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than [at] step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### III. RELEVANT FACTUAL BACKGROUND

Hosmer was 37 years old on the alleged disability onset date. R. 68. In her disability report, Hosmer claimed the following medical conditions: anxiety, depression, post-traumatic stress disorder, lower back pain, arthritis, and supraventricular tachycardia. R. 247. She has a high school education and previous employment as a cashier, caregiver, housekeeper, and in food service. R. 248. At the time of the hearing, Hosmer was 5'8" tall and weighed 280 pounds. R. 50–51. She was married and had an older son, a 16-year-old daughter, and a 7-month-old daughter. R. 51, 52.

Hosmer testified about both her physical and mental conditions. *See* R. 45–57. She explained that she has had fibromyalgia and neuropathy pain for "many years" and takes Percocet, Zanaflex, and Cymbalta to treat this pain. R. 49. Hosmer

5

stopped working in 2020 because her "pain . . . became where [she] couldn't do [her] every day job." R. 48. When asked about the pain in her hands, Hosmer said she wakes up with her hands hurting and swollen and that she "[c]ontinuously drop[s] things," like her baby's bottles. R. 54. Even with her medication, she estimates her pain at 7/10 on a typical day and said that she lays down for about four hours per day. R. 55. Hosmer used a cane during the hearing because of her "ankle and [her] hips." R. 50. In addition, Hosmer complained of tachycardia, which causes her "heart rate [to] stay[] high" and episodically can "just get[] really bad." R. 49. She attempted to treat it with an ablation, but the procedure was unsuccessful so she "pretty much deal[s] with it" R. 49.

    Hosmer also testified about Post-Traumatic Stress Disorder ("PTSD") and panic attacks, which she treats with Cymbalta. R. 50, 55–57. She has approximately two or three panic attacks per month, which usually last for about 30 minutes and cause her to feel "very tired" for about a day afterwards. R. 55. Her PTSD is triggered if she watches anything about sexual abuse or if she smells "old man cologne." R. 56. When triggered, Hosmer "breaks down," meaning she "just really want[s] to be closed off." R. 57. Hosmer also suffers from restless leg syndrome that worsens when she sleeps. R. 55.

    When asked about her daily activities, Hosmer explained that she and her husband share child-care duties and alternate trips to the pediatrician with their

younger daughter. R. 52.  Hosmer orders groceries online for her son to pick up. R. 52.  Her older daughter helps with chores, but Hosmer will fold clothes and "pick up here and there." R. 52.  She can shower and dress herself. R. 53.

Hosmer submitted medical evidence from various sources.  In January 2015, she had a lumbar MRI scan to determine the cause of her back pain. R. 1562.  The MRI revealed normal alignment and stable appearances but degeneration in discs L3–L4 and L4–L5. R. 1562.  There was no evidence of disc herniation, spinal stenosis, or neural compression. R. 1562.

Beginning in 2021, Hosmer regularly visited her primary physician, Dr. John Bivona, with complaints of chronic back pain and numbness or tingling in her legs. *See, e.g.*, R. 1820–23, 1831–33, 1835–36, 1844–46, 1948–49, 1956–59, 1999–2009, 2354–56, 2362–65.  Dr. Bivona performed a nerve conduction study in 2022 that revealed polyneuropathy. R. 2140.  At her routine visits, Hosmer described her pain level as 7/10 but reported optimal pain symptom control with her medication and improved daily function. *See, e.g.*, R. 1831–34, 1835–37, 1844–46, 1848–50, 1948–49, 2006–09, 2138, 2354–56.  Her physical examinations were normal, and she did not present muscle weakness or loss of movement. *See, e.g.*, R. 1836, 1841, 1845, 1849, 1953, 2008, 2148, 2151, 2359–60, 2363–64.  Dr. Bivona typically directed Hosmer to continue her treatment regimen, consisting of medications such as Percocet, Requip, Savella, and Zanax. *See, e.g.*, R. 1848–50, 1949, 1959, 2009,

7

2083–84, 2017–19, 2355.

In October 2022, Hosmer visited a rheumatologist, Dr. Gene Watterson. R. 1972. After a general muscoskeletal examination, Dr. Watterson noted that there was no evidence of synovitis nor any swelling, rubor, or calor of Hosmer's peripheral joints. R. 1972. A radiography of her hands revealed some joint space narrowing in multiple of the proximal and/or distal interphalangeal joints. R. 1972. This narrowing was accompanied by minimal marginal osteophytosis. R. 1972. Dr. Watterson opined that Hosmer's presentation was consistent with fibromyalgia and degenerative arthrosis, but he did not find evidence of any superimposed inflammatory arthropathy. R. 1972. For treatment, Dr. Watterson emphasized restorative sleep and recommended evaluation by a sleep clinic, meeting with a psychiatrist, and returning for follow-up care. R. 1972.

Hosmer also submitted evidence involving issues with her left ankle, on which she first had surgery in the mid-1990s. *See* R. 1514. After a fall in September 2021, Hosmer visited an orthopedic surgeon because she was experiencing pain in her left ankle. *See* R. 1514. An MRI revealed a minimally displaced transverse fracture, and Hosmer underwent ligament reconstruction surgery in November 2021. R. 1485, 1498, 1514, 1519–20. At follow-up visits during December 2021 and January 2022, she reported that she was doing well, attending physical therapy when possible, and had normal sensation in her ankle. R. 1498–99, 1511. At her January visit, she had

no complaints of pain. R. 1511. At doctors' visits in October 2022 and January 2024, she presented with a normal gait and no motor deficits. R. 1988, 2344.

For her PTSD, depression, and anxiety, Hosmer received counseling from Northwest Alabama Psychiatric Services. R. 1533–53, 1895–1904. At her first visit, she reported that Cymbalta made her lightheaded and dizzy for the first three to four days. R. 1539. After her side effects improved, Hosmer noticed the medication helped with her neuropathic pain but was less effective for her depression and anxiety. R 1539. And her sleep was still poor, so she received a prescription for Trazodone, which had helped her in the past. R. 1539. At visits in June and August 2022, she said her sleep was improving but her mental health was still "up and down." R. 1903–04. In February 2023, Hosmer reported she was seven weeks pregnant and off all medications except Cymbalta. R. 2342. Her mood was "okay," but she was feeling some depression. R. 2342. The doctor continued her on Cymbalta in April 2023 after Hosmer stated she was doing well. R. 2343–46. At the same visit, her gait was normal and she did not present with any muscle or joint weakness or swelling. R. 2344.

On two different occasions, state agency physicians reviewed the medical evidence in the record and opined on Hosmer's physical and mental residual functional capacity ("RFC"). In February 2022, Dr. Richard Whitney Jr. found that Hosmer could physically perform a range of medium level work. R. 75–77. He

concluded she did not have any manipulative limitations but had some postural and environmental limitations. R. 75–76. Dr. Whitney said Hosmer should never climb ladders, ropes, and scaffolds and she should avoid concentrated exposure to extreme heat and any exposure to hazards like machinery or unprotected heights. R. 75–76. As for her mental RFC, Dr. Brian McIntyre offered the opinion that Hosmer is impaired to some degree. R. 74. She is moderately limited in her ability to understand and remember detailed instructions but is capable of performing simple, repetitive tasks. R. 74, 77. Dr McIntyre highlighted that Hosmer could perform many activities of daily life like household chores and preparing basic meals. R. 74.

On reconsideration in March 2023, Dr. Victoria Hogan found Hosmer could perform a range of medium work. R. 87–88. Like Dr. Whitney, she opined that Hosmer had no manipulative limitations but had postural and environmental limitations. R. 87–88. More specifically, Hosmer could occasionally climb ladders, ropes, and scaffolds and should avoid unprotected heights. R. 87–88. Dr. Virginia Lee Bare evaluated Hosmer's mental RFC and similarly found that Hosmer could perform simple, repetitive tasks. R. 89. Dr. Bare said that Hosmer would benefit from repetition of detailed tasks, a well-spaced work environment, and infrequent changes in the workplace. R. 89–90.

The ALJ issued her decision on May 8, 2024. R. 36. Under step one of the five-step evaluation process, she found that Hosmer met the insured status

requirements through December 21, 2025, and had not engaged in substantial gainful activity since her alleged onset date of July 1, 2020. R. 24.  The ALJ concluded that Hosmer suffered from the severe impairments of degenerative disc disease, PTSD, anxiety, attention deficit hyperactivity disorder, neuropathy, status post open reduction and internal fixation left ankle, obesity, fibromyalgia, chronic pain syndrome, and mild degenerative joint disease bilateral hands. R. 24.  The ALJ noted that these medically determinable impairments significantly limit Hosmer's ability to perform basic work activities. R. 24.  The ALJ considered the following additional conditions: irritable bowel syndrome, hypertension, gastroesophageal reflux disease, obstructive sleep apnea, and supraventricular tacychardia. R. 25.  Noting that Hosmer did not report continuing symptoms or significant issues related to these conditions, the ALJ found them to be non-severe impairments. R. 25.  The ALJ concluded at step three of the analysis that none of Hosmer's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 25.

Before proceeding to the fourth step, the ALJ determined that Hosmer had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). R. 28.  The ALJ found that Hosmer had the following work limitations:

> [S]he can occasionally climb ramps and stairs, stoop, kneel, and crouch. She should never climb ladders, ropes or scaffolds nor should she crawl. She can frequently handle and finger with her bilateral upper

extremities. She can have only occasional exposure to extremes of cold as well as full body vibrations. She should have no exposure to hazards such as unprotected heights and hazardous machinery. She would be able to understand, remember and carry out simple instructions and tasks. She can tolerate changes in the workplace that are infrequent and gradually introduced. She can have occasional work-related interaction with supervisors, coworkers and the general public.

R. 28.  At the fourth step, the ALJ considered Hosmer's age, education, work experience, and RFC in determining that she was not capable of performing her past relevant work. R. 34–35.  However, the ALJ determined that there were other jobs existing in the national economy that Hosmer could perform, including work as a lens inserter, egg processor, and addressing clerk. R. 35–36.  As a result, the ALJ concluded Hosmer was not disabled within the meaning of the Social Security Act from July 1, 2020, through the date of the decision. R. 36.  Based on these findings, the ALJ denied Hosmer's application for benefits. R. 36.

## IV.  DISCUSSION

Hosmer argues that the ALJ improperly considered her subjective descriptions of pain when considering the effects of her fibromyalgia and chronic pain syndrome on her ability to engage in substantial gainful activity. Doc. 15 at 12–13.  In addition, Hosmer contends that the ALJ's finding that she could handle and finger with her upper bilateral extremities is not supported by substantial evidence. Doc. 15 at 12–13.  For the reasons that follow, the court rejects both arguments and finds that substantial evidence supports the ALJ's determinations.

A. **Subjective Pain Statements**

When considering a claimant's subjective description of pain, the law is clear:

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d). The ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including her history, medical signs and laboratory findings, and statements from medical sources or other sources about how her symptoms affect her. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). "The question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm. of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ need not conduct an explicit symptom analysis, but the reasons for her findings must be clear enough that they are obvious to a reviewing

court. *See Foote*, 67 F.3d at 1562. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Hosmer's medically determinable impairment could reasonably be expected to cause the alleged symptoms, but her statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 28. These findings are supported by substantial evidence.

The ALJ examined the medical evidence and Hosmer's testimony about her daily activities. The ALJ noted several reasons for discounting Hosmer's complaints: (1) no treating, examining, or reviewing doctor ever indicated she is disabled or unable to work; (2) her symptoms have been well controlled with prescription medications, therapy, and past surgeries; (3) she stopped taking her chronic pain medications during her pregnancy with no issues; (4) her physical examinations were normal with no indication of reduced range of motion, pain with movement, or sensory or focal deficits; and (5) she could drive, watch television, shower, dress, and prepare simple meals. R. 29–32. The ALJ specifically referenced a number of medical records reflecting "relatively benign" (*see* R. 34) objective findings:

- An MRI from 2015 indicated L3–L4 and L4–L5 disc degeneration but that her back had "stable appearances" without disc herniation, spinal stenosis, or neural compression. R. 1562. She was treated with oral medications but no spinal surgical recommendations or epidural steroid injections. R. 1562.
- April 2021 and August 2022 treatment notes from Dr. Bivona showing Hosmer reported 7/10 back pain but that her pain was better with medication and her daily function was improving. R. 1859–61, 2017–20. Dr. Bivona continued her on the same treatment plan at these visits. R. 1861, 2019–20.
- January 2022 treatment notes post-ankle surgery where she reported no pain. R. 1511. Later physical examinations revealed she had a normal gait, station, and sensation. *See, e.g.*, R. 1988, 2344.
- A September 2022 x-ray revealing mild degenerative joint disease in her hands and some joint space narrowing but no acute or erosive changes in her hands. R. 1972.
- February 2023 and April 2023 treatment notes where Hosmer reported to a psychiatrist that she was off all medications but Cymbalta and doing well. R. 2342, 2343–46.
- March 2024 treatment notes from Dr. Bivona showing Hosmer had no muscle weakness or loss of movement, could move all extremities well, and did not present edema or cyanosis despite her complaints of back pain. R. 2354–57.

The ALJ's opinion therefore properly reflects that the ALJ considered the evidence before her and articulated her reasons for discrediting Hosmer's subjective complaints.

Hosmer's argument essentially rests on her diagnosis of fibromyalgia from Dr. Watterson and her own complaints of back pain during visits with Dr. Bivona. *See* Doc. 15 at 11–12. But a diagnosis of fibromyalgia alone is insufficient to support a finding of disability, and Hosmer did not present medical evidence that she sought

15

follow-up treatment or that the fibromyalgia affected her ability to function. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."); *Laurey v. Comm. of Soc. Sec.*, 632 F. App'x 978, 988–89 (11th Cir. 2015) (affirming ALJ's finding that claimant's fibromyalgia was not disabling where the record was devoid of any medical evidence that showed the fibromyalgia imposed any functional limitations); *Frazier v. Berryhill*, 2019 WL 3220025, at *3–4 (N.D. Ala. July 17, 2019) ("The mere fact that the ALJ determined that Plaintiff's fibromyalgia was a 'severe impairment,' however, does not mean that the ALJ was required to attribute severe pain to her fibromyalgia.") (cleaned up) (quoting *Laurey*, 632 F. App'x at 988). Further, Hosmer's course of treatment for her chronic back pain and mild degenerative disc disease appeared to be managed by oral medication and, as the ALJ noted, she took only Cymbalta during her pregnancy and was able to function well. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding substantial evidence to discredit the claimant's testimony about pain where his course of treatment was conservative); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied by surgery, treatment, or medication is not disabling."); *Laurey*, 632 F. App'x at 989 (holding the ALJ properly discredited claimant's subjective statements where her

degenerative disc disease was mild, her pain was described as "improved control," and her physical assessments demonstrated normal strength and gait). Finally, the record reflects that Hosmer can prepare simple meals, perform simple household chores, drive, watch television, shop online, and attend doctor's appointments. R. 52–53, 263–64, 300–02. The ALJ properly considered these activities when determining the limiting effects of Hosmer's conditions. *See Meehan v. Comm. of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (holding the ALJ properly found subjective complaint inconsistent with a record of simple daily activities); *Laurey*, 632 F. App'x at 989 (considering claimant's ability to care for herself, her daughter, and do light housework).

Here, the ALJ properly evaluated Hosmer's subjective complaints of pain and clearly articulated her reasons for discrediting these statements. *See Foote*, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."). The ALJ's determinations are supported by substantial evidence and Hosmer's argument to the contrary is without merit.

**B.    Ability to Handle and Finger**

Hosmer also claims that the ALJ's finding that she could frequently handle and finger with her bilateral upper extremities is not supported by substantial evidence. Doc. 12–13. The court disagrees.

17

An RFC determination is an assessment, based on all relevant evidence, of a claimant's ability to work despite her impairments. *Lewis*, 125 F.3d at 1440. "There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, *i.e.*, where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm., Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). As explained, when an ALJ discounts subjective testimony about a claimant's symptoms, he must articulate "explicit and adequate reasons" for doing so. *Wilson*, 284 F. 3d at 1225. A reviewing court will not disturb an ALJ's credibility finding if it is supported by substantial evidence. *Mitchell v. Comm., Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, substantial evidence supports the ALJ's RFC finding that Hosmer could perform sedentary work with frequent handling and fingering. Hosmer testified that she wakes up with her hands hurting and she "[c]ontinuously drop[s] things." R. 54. But the objective medical evidence supports the ALJ's findings that Hosmer's hand issues were not as extensive as she claims. While Hosmer cites the several visits with Dr. Bivona where she complained of chronic pain (*see* Doc. 15 at 12–13), the treatment notes indicate these complaints were specific to her back and lower extremities. *See, e.g.*, R. 1820–23, 1831–33, 1835–36, 1844–46, 1948–49, 1956–59,

1999–2009, 2354–56, 2362–65. And as the ALJ noted, Hosmer's physical examinations at several doctor's visits showed no weakness or loss of movement. *See* R. 29–32, 1836, 1841, 1845, 1849, 1953, 2008, 2148, 2151, 2359–60, 2363–64. Hosmer's visit with Dr. Watterson may have revealed mild degenerative joint disease with some joint narrowing in her hands, but Hosmer never presented for follow-up or sought further treatment. R. 30, 1972. Hosmer does not identify any other objective evidence in the record demonstrating any manipulative limitations, and the court finds that the ALJ adequately considered the medical evidence in the record as a whole in reaching her conclusion. *See Packer*, 542 F. App'x at 891–92; *Hand v. Soc. Sec. Comm.*, 786 F. App'x 220, 226–27 (11th Cir. 2019) (affirming ALJ's finding that claimant could frequently reach, handle, and finger because the claimant's MRIs showed only minimal disc desiccation and her treatment records showed normal strength and range of motion).

Essentially, Hosmer's argument asks the court to substitute its own judgment for the ALJ's and assign greater weight to Hosmer's subjective testimony. This is improper. *See Miles*, 84 F.3d at 1400. Instead, the court gives great deference to the ALJ's findings of fact. *See Hunter v. Comm. of Soc. Sec.*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). It is the court's job to

review the agency's decision and determine whether its conclusion, as a whole, is supported by substantial evidence in the record. *Foote*, 67 F.3d at1558 (citing 42 U.S.C. § 405(g)). "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). Here, substantial evidence supports the ALJ's decision.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on November 5, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE